<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ELENA FERRANTE,<br><br>                    Plaintiff,<br>     v.<br><br>AMGEN, INC.,<br><br>                    Defendant. | **Civil Action No. 13-07344 (SRC)**<br><br>**OPINION** |

<u>**CHESLER**</u>, District Judge

This is a breach of contract and consumer fraud action for damages, collaterally related to an employment dispute between the parties that was resolved through arbitration.[1]  Plaintiff Elena Ferrante ("Ferrante") contends that Defendant Amgen, Inc. ("Defendant") deprived her of a contractual right to obtain a speedy arbitration proceeding through its agents, the private company that conducted the arbitration and the arbitrator himself.  Plaintiff further contends that the private arbitration company and the arbitrator were again acting as Defendant's agents when they misrepresented to Plaintiff their ability to quickly and efficiently arbitrate her dispute. Defendant has moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket Entry 3.]  Plaintiff opposes the motion and has filed a cross-motion for leave to file an amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a).  [Docket Entry 14.]  The Court has considered the parties' submissions, and will rule on the motions without

---

[1] Plaintiff originally filed suit in the Superior Court of New Jersey, Bergen County.  Pursuant to 28 U.S.C. § 1441, Defendant removed, and it appearing that the parties are completely diverse and the amount in controversy requirement is met, this Court exercises jurisdiction under 28 U.S.C. § 1332.

oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the foregoing reasons, the Court will grant Defendant's motion and deny Plaintiff's, and the Complaint will be dismissed with prejudice.

**I.     Background**

Plaintiff was formerly employed by Defendant as a pharmaceutical sales representative.  In June 2002, Plaintiff and Defendant executed a Mutual Agreement to Arbitrate Claims (the "Mutual Agreement"), an arbitration agreement that required both parties to resolve by binding arbitration "all past, present, or future claims or controversies" between them.  (See Griffinger Cert., Ex. A, at 1.)  Relevant to the instant suit, the first paragraph of the Mutual Agreement's "Introduction" section contains the following language: "I understand and agree that by entering into this [Mutual Agreement], I anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure."  (Id.)  Plaintiff was fired three years after executing the Agreement, and subsequently filed suit against Defendant in state court for discrimination and wrongful termination.

Plaintiff voluntarily dismissed her state court suit and served a demand for arbitration in April 2007.  Defendant chose the JAMS dispute resolution company to provide arbitration services, and the parties mutually agreed that the Hon. John C. Lifland (ret.) would serve as the arbitrator of their dispute.  Defendant paid for "all costs of the [arbitration] proceeding," including fees collected by JAMS.  (Compl. ¶ 142.)  On April 26, 2012, after discovery and extensive motion practice, Judge Lifland entered a Final Award, in which he dismissed all of Plaintiff's claims and imposed sanctions on her counsel.  (See Griffinger Cert., Ex. B, at 5.)

Plaintiff moved for reconsideration of the Final Award, arguing among other things that the arbitration proceeding took too long.  On July 21, 2012, Judge Lifland issued a ruling denying Plaintiff's motion and confirming the April 26, 2012 Final Award.  (See Griffinger Cert., Ex. C, at 9.)[2]  As to Plaintiff's undue delay arguments in particular, Judge Lifland found that he had given "thorough consideration" to the "legal merits of [Plaintiff's] many asserted claims," and thus "accept[ed] a small portion of responsibility" for the length of the proceedings.  (See id. at 3.)  He nevertheless found Plaintiff responsible for a substantial portion of the arbitration's "extensive delay," citing for example repeated requests by Plaintiff's counsel for sanctions and Plaintiff's "extensive discovery requests."  (See id. at 3-4.)  Judge Lifland's April 26, 2012 Final Award, which along with July 21, 2012 Order denying reconsideration "constitute[d] the final determination of the Arbitrator," (see id. at 9), was confirmed by the Superior Court of New Jersey, Chancery Division on December 13, 2012.[3]

Plaintiff then initiated this lawsuit.  The Complaint asserts causes of action for breach of contract and misrepresentation in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -20.  Both counts are premised on the same basic theory.  As to the breach claim, Plaintiff alleges that Mutual Agreement obligated Defendant to provide her with a "speedy" arbitration and that JAMS and Judge Lifland were acting as Defendant's "agents" when they caused "the [arbitration] proceeding to not be fast and efficient . . . ."  (Compl. ¶¶ 127-34.)  As to the CFA claim, Plaintiff alleges that JAMS and Judge Lifland were again acting

---

[2] Both the April 26, 2012 Final Award and the July 21, 2012 Order denying reconsideration are "integral to" and "explicitly relied upon" in the Complaint, and thus both documents may be properly considered here.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted).

[3] The Order confirming Judge Lifland's arbitration award, the authenticity of which is not challenged here, is a matter of public record, and thus can properly be considered by this Court when ruling on a Rule 12(b)(6) motion.  See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998).

as Defendant's agents when they "misrepresented" to Plaintiff their collective desire and ability to "provide a fast and efficient arbitration proceeding to Plaintiff." (Compl. ¶ 140.)

Defendant now moves to dismiss. In support of its motion, Defendant advances two arguments. Defendant argues that the Complaint does not state a breach of contract or CFA claim. (Def.'s Mov. Br. at 9.) Defendant also contends that Plaintiff is collaterally estopped from bringing this lawsuit because the issue at the nub of this action – whether Plaintiff was entitled to and indeed received a "speedy" arbitration – was addressed and decided by Judge Lifland in the course of the JAMS arbitration. (Id. at 5.)

## II. Discussion

### A. Legal Standard

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). While the Court must construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual

4

allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

A pretrial motion for leave to replead is governed by Rule 15(a), which instructs that such leave is to be freely given "when justice so requires." Motions to amend the pleadings should therefore only be denied where there is "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiencies by amendments previously allowed or futility of amendment." Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (quoting Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)). Futility may serve as grounds to deny a motion for leave to amend where "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434 (internal quotation omitted). A court assessing "futility" "applies the same standard of legal sufficiency" employed in the Rule 12(b)(6) context. See id.

### B.  Plaintiff's Breach of Contract Claim

The elements of a breach of contract cause of action under New Jersey law[4] are familiar – the plaintiff must allege: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." Sheet Metal Workers Int'l Assoc. Local Union No. 27 v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013) (citing Coyle v. Englander's, 488 A.2d 1083, 1088 (N.J. Sup. Ct. App. Div. 1985)). Defendant contends that the Complaint does not plausibly establish the last two elements, and Plaintiff's breach claim must therefore fail.

The Court agrees. Initially, any delay in the resolution of the JAMS arbitration proceeding would have been that of the arbitrator, and not the Defendant. Plaintiff's assertions

---

[4] It is undisputed that the contract claim is governed by New Jersey law.

that JAMS and Judge Lifland were agents of Defendant in some manner are unsupported legal conclusions. (See, e.g., Compl. ¶ 34 ("Defendant Amgen is liable for the failures and breaches of its agents [JAMS and Judge Lifland] in implementing the [Mutual] Agreement.").) As such, they cannot be used to defeat a motion to dismiss. See Iqbal, 556 U.S. at 678. The Complaint is otherwise wholly devoid of factual allegations that plausibly establish Defendant had any authority – actual or apparent – over either JAMS or Judge Lifland. See New Jersey Lawyers' Fund for Client Protection v. Stewart Title Guar. Co., 1 A.3d 632, 639 (N.J. 2010) ("an agent may only bind his principal for such acts that 'are within his actual or apparent authority' (quoting Carlson v. Hannah, 78 A.2d 83 (N.J. 1951))).

Plaintiff's argument in opposition effectively admits the Complaint is deficient on this score. (See Opp. Br. at 3. ("JAMS agency relationship with Amgen is unknown.").) Plaintiff instead asserts there might be documents that could come to light which evidence some type of agency relationship. (See id.) This argument misses the point, and runs contrary to post-Iqbal pleading standards – "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79. In other words, Plaintiff is not excused from the requirement that she plausibly plead the requisite agency relationship because she has a hunch that Defendant, Amgen, and Judge Lifland were in cahoots.

Moreover, Plaintiff's lawsuit implicitly asserts that the arbitrator was not independent in determining the pace and progress of the arbitration proceeding. But the Complaint is devoid of pleadings to plausibly suggest Judge Lifland was not objective in controlling the JAMS arbitration, and fails to allege that Judge Lifland did not make his own decisions during the proceeding. The Court recognizes that the Complaint refers at various times to the incentive for

both JAMS and Judge Lifland to "prolong[] [the arbitration] proceedings in order to maximize billings." (See, e.g., Compl. ¶¶ 29, 94.)  Of course, were the Court to countenance such allegations, it would undermine the efficacy of all private dispute resolution.  Without more, the statement that JAMS and Judge Lifland made more money the longer the arbitration went on is of no moment to the instant motion.  Where a plaintiff chooses to file a lawsuit that collaterally impugns the independence and impartiality of an arbitrator – here, a distinguished retired federal judge – it is advisable that the Complaint allege more than the fact that the arbitrator was paid for his services.

Defendant also correctly contends that Plaintiff lacks an enforceable right upon which to sue.  The express language in the Mutual Agreement that forms the basis of Plaintiff's suit – "I anticipate gaining the benefits of a speedy, impartial dispute-resolution process" – does not create an obligation on the part of the Defendant to actually provide such a process.  This language is at best precatory – it is nothing more than an expression of the hoped for benefits to be gained by undertaking the obligation to arbitrate claims.  Indeed, the Mutual Agreement does not define "speedy," nor does it state who will give Plaintiff the benefit she anticipates.  Such an indefinite statement of intent is insufficient to create an enforceable right under New Jersey law.  See Bethea v. Roizman, No. 11-254 (JBS), 2012 WL 4490759, at *20 (D.N.J. Sept. 27, 2012) ("to be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty" (quoting Friedman v. Tappan Dev. Co., 126 A.2d 646 (N.J. 1956))).

Finally, the Court finds that the breach of contract claim must also fail because the Complaint does not plausibly allege damages.  (See Def.'s Mov. Br. at 13.)  It appears that the

Complaint's only reference to harm flowing from the alleged breach is in Paragraph 135, in which Plaintiff alleges she was "damaged" "[b]y not receiving a fast and efficient" arbitration. This statement, however, is the quintessential "legal conclusion couched as factual allegation" that cannot serve to underpin a necessary element of a claim. See Baraka, 481 F.3d at 196; Iqbal, 556 U.S. at 678. The Complaint otherwise describes a drawn out and apparently contentious arbitration proceeding, instituted by the Plaintiff, which resulted in an Order dismissing Plaintiff's claims and sanctioning her counsel. (See Griffinger Cert., Ex. B, at 5.) It is unclear what the compensable loss to Plaintiff could be under such a circumstance, and neither the Complaint nor Plaintiff's opposition papers attempt to explain it. The breach of contract claim must therefore fail for the independent reason that the Complaint does not allege damages.

### C. Plaintiff's CFA Claim

The Complaint also fails to state a plausible claim for relief under the New Jersey CFA. Initially, the Court notes that the allegations in the Complaint are entirely unsuited to the consumer fraud context. The CFA makes it unlawful for a person to use or employ "any unconscionable commercial practice, deception, fraud . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . ." N.J. Stat. Ann. § 56:8-2. But the Complaint in this case is grounded in an arbitration agreement between an employer and its employee, not any sort of consumer transaction. Conclusory allegations that Plaintiff consumes and JAMS provides "arbitration services within the meaning of" the CFA do not change the underlying nature of the suit. (See Compl. ¶¶ 137-138.)

To the extent the CFA would apply, the Complaint fails to plead the necessary elements

of a cause of action. A CFA plaintiff must plead: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC, 655 F. Supp. 2d 473, 504 (D.N.J. 2009) (quoting Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009)). "Unlawful conduct" under the Act is limited to "affirmative misrepresentation[s], . . . the knowing omission or concealment of a material fact, . . . or a violation of a specific regulation promulgated under the CFA." Gupta v. Asha Enters., LLC, 27 A.3d 953, 959 (N.J. Super. Ct. App. Div. 2011) (quotation and marks omitted). Insofar as the Court understands Plaintiff's argument, the only unlawful conduct asserted in the Complaint would be that of JAMS or Judge Lifland. Thus, the unlawful conduct element must fail for the reasons set forth above – there are simply no facts pleaded that plausibly establish an agency relationship such that Defendant could be held liable for the actions employed by JAMS or Judge Lifland during the arbitration proceeding.

There are also no allegations that establish ascertainable loss. The Court recognizes that "the threshold for pleading ascertainable loss is low[.]" Shelton v. Restaurant.com Inc., 543 F. App'x 168 (3d Cir. 2013) (citing Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 790 (N.J. 2005)). In order to state a claim, however, a CFA complaint must still allege "a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland, 964 A.2d at 749. Here, the Complaint does not attempt to delineate a certain and measurable loss – say, the costs incurred paying for the arbitration. Indeed, Plaintiff could not so allege, as the Complaint itself explicitly pleads that Defendant, and not Plaintiff, paid the fees related to the arbitration. (Compl. ¶ 142.)

9

Rather, it appears that Plaintiff believes her loss to be the failure to receive a sufficiently quick arbitration proceeding. (See Compl. ¶ 140 ("JAMS and Lifland misrepresented their ability and/or willingness to provide a fast and efficient arbitration proceeding.").) But Plaintiff does not present to the Court, and the Court itself is unaware of, any authority supporting the proposition that a litigant's displeasure with the pace of an arbitration proceeding is a sufficiently definite and certain loss such for purposes of the CFA. Indeed, Courts in this District have held – albeit in different contexts – that "[d]issatisfaction with a product . . . is not a quantifiable loss that can be remedied under the NJCFA." See Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 704 (D.N.J. 2011); Franulovic v. Coca-Cola Co., No. 07-539 (RMB), 2007 WL 3166953, at *7-8 (D.N.J. Oct. 25, 2007) (quoting Solo v. Bed Bath & Beyond, Inc., No. 06-1908 (SRC), 2007 WL 1237825, at *3 (D.N.J. April 26, 2007)). The Court is similarly confident that the New Jersey Supreme Court would not sanction a CFA suit premised on a concept as nebulous as Plaintiff's dissatisfaction with the pace by which her arbitration proceeded. See Thiedemann, 872 A.2d at 793 ("The certainty implicit in the concept of 'ascertainable' loss is that it is quantifiable or measurable." (quotation omitted)). Consequently, the CFA claim must also be dismissed because of the failure to sufficiently allege an ascertainable loss.

### D. Plaintiff's Motion for Leave to Replead

Plaintiff's motion for leave to amend will be denied. The motion focuses almost exclusively on Defendant's argument, advanced in support of its motion to dismiss, that Plaintiff has failed to sufficiently plead the requisite agency relationship between JAMS, Judge Lifland, and Defendant. To that end, Plaintiff proposes adding pleadings that (1) characterize a purported "overriding contractual and business relationship between JAMS and Amgen that pre-dated

Plaintiff's specific Mutual Agreement to Arbitrate Claims"; and (2) allege that this relationship "influenced, controlled and/or impacted the [Mutual Agreement] between Plaintiff and Amgen." (Plf.'s Mov. Br. at 3.)  The problem with this approach is that the proposed allegations do not describe the relationship between Defendant and JAMS, Defendants and Judge Lifland, or Judge Lifland and JAMS in a way that would allow the Court to plausibly infer that Defendant had some authority over the outcome of the proceeding or the arbitrator's decisions.  As Defendant highlights, the new allegations amount to speculation about agreements that might exist and the effect that those theoretical agreements might have had on a proceeding overseen by an arbitrator who was chosen jointly by the parties.  (See Def.'s Opp. Br. at 6.)  There is nothing in Plaintiff's Amended Complaint that plausibly demonstrates the agency relationship necessary for her lawsuit to survive, and because such deficiency would render the Amended Complaint ripe for dismissal under Rule 12(b)(6), this Court will deny on futility grounds the motion for leave to replead.  See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend may be denied . . . if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.").[5]

---

[5] Plaintiff's proposed Amended Complaint seeks to add a single allegation referencing the covenant of good faith and fair dealing. (See Plf.'s Mov. Br. at 1.)  To the extent Plaintiff intends that reference to assert a claim for breach of the covenant, such a claim would be deficient here.  An action for breach of the covenant of good faith and fair dealing is only recognized where the defendant's acts serve to deprive the plaintiff of the reasonably expected "fruits of the contract."  See Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997).  No such allegations are present in either the original or Amended Complaints.  As stated, Plaintiff took advantage of the Mutual Agreement when she sought a resolution of her employment claims through arbitration.  Although it took longer than hoped, Plaintiff received a decision, albeit one with which she disagrees.  In such a circumstance, it cannot be said that Plaintiff did not receive the benefit of her bargain.

E.    **Collateral Estoppel**

Notwithstanding her present failure to plead any cognizable cause of action, and the apparent futility of any attempt to do so in the future, Plaintiff's lawsuit is barred by the doctrine of collateral estoppel, and is ripe for dismissal on that ground as well. Collateral estoppel is an equitable doctrine that prevents parties from relitigating issues that have already been "fairly litigated and determined . . . ." First Union Nat. Bank v. Penn Salem Marina, Inc., 921 A.2d 417, 423 (N.J. 2007).[6] Issue preclusion applies where:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Id. at 423-24. Under New Jersey law, the burden to demonstrate the existence of these factors rests with "the party asserting the bar" – here, Defendant. See id. at 424.

Defendant's task is made demonstrably easier by Plaintiff's failure to address the collateral estoppel argument in her opposition papers. Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed. See Griglak v. CTX Mortgage Co., No. 09-5247 (MLC), 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010); Leisure Pass N. Am., LLC v. Leisure Pass Group, Ltd., No. 12-3375 (WJM), 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it."). Thus, on this basis alone

---

[6] This Court applies New Jersey collateral estoppel principles to determine whether Plaintiff's suit is precluded here. See Interfaith Cmty. Org. Inc. v. PPG Indus., Inc., 702 F. Supp. 2d 295, 303 (D.N.J. 2010) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)).

the Court could accept Defendant's collateral estoppel argument and dismiss the breach of contract and CFA causes of action.

The Court need not take such a drastic step in this case, however, because Defendant is correct on the merits. All five collateral estoppel elements are present in this case. First, Judge Lifland addressed and contemplated the issue of the undue length of the JAMS arbitration after Plaintiff moved for reconsideration of the Final Award. (See Griffinger Cert., Ex. C, at 3 ("Claimant does pursue arguments in her brief that this arbitration proceeding was unduly long. . . . However, that is not a reason for reconsideration of the final award.").) Second, it is readily apparent that the issue of whether undue delay compromised the arbitration proceeding was actually litigated before Judge Lifland – indeed, as Defendant highlights, Judge Lifland found Plaintiff substantially responsible for the slow progress of the proceeding. (See, e.g., id. ("[d]elay is also attributable to Claimant's unswerving position . . . that she was entitled to much more discovery").) Third, arbitration awards are generally entitled to preclusive effect, even if the award is unconfirmed. See Robbins v. U.S. Foodservice, Inc., No. 11-4599 (JBS), 2012 WL 3781258, at *4 (D.N.J. Aug. 30, 2012). The Court sees no reason why it should treat Judge Lifland's confirmed Final Award any differently, and thus finds the Final Award a sufficient final judgment for collateral estoppel purposes. Fourth, the issue of undue delay was both actually decided and "was critical to" Judge Lifland's order denying reconsideration of the arbitration award. O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1067 (3d Cir. 1991) (applying Restatement (Second) of Judgments § 27 cmt. h (1982)).[7] Finally, Plaintiff was a party to the JAMS arbitration proceeding from which this lawsuit stems.

---

[7] O'Leary is a case applying Pennsylvania preclusion principles, but is instructive here because it applies the standards established by the Restatement of Judgments, and "New Jersey courts

In short, Plaintiff already raised the issue of delay during the JAMS arbitration itself, litigated the issue before the arbitrator, and was in fact found to be the primary instigator of the complained of problem. Defendant has demonstrated that under well settled issue preclusion principles Plaintiff should be estopped from relitigating whether her JAMS arbitration was sufficiently speedy, and as her entire Complaint is premised on that theory, it will be dismissed.

### III.   Conclusion

In a final analysis, it does not appear that Plaintiff has or could ever plead viable breach of contract or consumer fraud causes of action. It instead appears that this suit is merely a vehicle through which Plaintiff seeks to reargue before a federal court her disagreements with the result of her JAMS arbitration proceeding and her displeasure with many of the decisions the arbitrator made in that proceeding. Indeed, Plaintiff devotes more than fifty paragraphs of her Complaint to argument over the merits of various decisions made by Judge Lifland during the arbitration. (See, e.g., Compl. ¶ 106 ("The Arbitrator never drew negative inferences against Amgen, and in favor of Plaintiff, from [the failure to preserve evidence], contrary to Jerista v. Murray, 185 N.J. 175 (2005).").) These disagreements, to the limited extent that they may be considered by a court, should have been aired before the Superior Court of New Jersey when Defendant sought confirmation of Judge Lifland's arbitration award. With the Chancery Division having found nothing in the arbitration proceeding sufficient to set aside the Final Award, this Court is no position to revisit the proceeding, and will not countenance Plaintiff's attempt to do so by way of an ill-advised breach of contract and consumer fraud lawsuit. The Complaint will therefore be dismissed with prejudice.

An appropriate Order will be filed herewith.

---

follow the doctrine of collateral estoppel . . . described in the Restatement . . . ." Hernandez v. Region Nine Housing Corp., 684 A.2d 1385, 1392 (N.J. 1996).

                                              s/ Stanley R. Chesler
                                             STANLEY R. CHESLER
                                          United States District Judge

Dated: March 18th, 2014